THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRCIT OF VIRGINIA
Norfolk Division

**JOSEPH H. ANDREANA,**
    On behalf of himself and all others
    similarly situated,

       **Plaintiff,**

v.                                                                                             Civil Action No.: 2:17-cv-574

**VIRGINIA BEACH CITY PUBLIC SCHOOLS
and
SCHOOL BOARD OF THE CITY OF
VIRGINIA BEACH,**

**MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS UNDER FRCP RULE 12(b)(6)**

COME NOW Defendants VIRGINIA BEACH CITY PUBLIC SCHOOLS and SCHOOL BOARD OF THE CITY OF VIRGINIA BEACH, by counsel, and for its Memorandum in Support of Motion to Dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, states as follows:

**PRELIMINARY STATEMENT**

Plaintiff seeks relief under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.* ("ADEA"), alleging disparate treatment (Count I), disparate impact (Count II), and pattern and practice discrimination (Count III). Plaintiff fails to state a claim for disparate impact, as he fails to identify a specific employment practice, fails to assert facts to support a statistical disparity, and fails to allege facts from which the Court could infer the required causation. Plaintiff has also failed to state a claim for pattern and practice discrimination as he fails to assert (other than in an impermissibly conclusory fashion) that the alleged discrimination was Defendants' standard operating procedure and fails to assert the alleged discrimination was intentional. Additionally,

1

dismissal of all claims against Virginia Beach City Public Schools ("VBCPS") is proper as it is not an entity that can be sued.

## FACTUAL BACKGROUND

For purposes of considering this motion to dismiss under Rule 12(b)(6), Plaintiff's allegations must be treated as if they are true. Therefore, Defendants attempt to summarize the facts pertinent to the claims against them and relevant to the issues raised in this Motion to Dismiss, as pled by the Plaintiff, as follows:[1]

Plaintiff alleges that, in the spring of 2015, Defendants decided to reduce 104 Computer Resource Specialist ("CRS") positions to 84 Information Technology Specialist ("ITS") positions. Compl., ¶ 10. Plaintiff alleges that "Defendants implemented a screening and evaluation process and policy for the purpose of choosing among the candidates for the ITS positions." *Id.*, ¶ 11. Plaintiff argues that "Defendants' screening and evaluation process did not evaluate applicants fairly but instead discriminated against candidates based on age" and that "CRS employees who were substantially older and with vastly more experience in the position and field were systematically passed over for the ITS position in favor of younger, less-qualified applicants." *Id.*, ¶ 12. Plaintiff provides no additional details regarding the alleged discriminatory "screening and evaluation process".

Plaintiff alleges further that "Defendants' ITS selection process discriminated on the basis of age and was Defendants' standard operating policy." *Id.*, ¶ 23. In addition to this conclusory assertion, Plaintiff alleges that "[t]hrough this policy Defendants engaged in a pattern and practice of discrimination." *Id.* As to his claim for disparate impact, Plaintiff again asserts in a conclusory

---

[1] Defendants attempt to summarize facts as pled by the Plaintiff for the sole purpose of the Motion to Dismiss pursuant to Rule 12(b)(6), however, Defendants deny the allegations contained in Plaintiff's Complaint.

manner that "Defendants' selection process caused a disparate impact on the basis of age…Older and more experienced CRS employees in the protected class were systematically rejected by Defendants of the ITS positions in favor of substantially younger, less qualified applicants." *Id.*, ¶ 24.

As for his statistical analysis, Plaintiff offers the following: Plaintiff asserts 99 of the 104 CRS employees applied for the ITS positions, and another 100 persons who were not CRS employees also applied. *Id.*, ¶ 11. The average age of the 104 CRS employees as of March of 2015 was 49.4 years. *Id.*, ¶ 10. The average age of the 99 CRS employees who applied to the ITS positions was 48.1 years. *Id.*, ¶ 13. Of the 99 CRS employees who applied, 74 were initially selected for the position, and these 74 had an average age of 45.6 years. *Id.* 22 applied for and were initially denied ITS position.[2] *Id.* All 22 applicants were over 40 years of age and had an average age of 56.1. *Id.* Plaintiff alleges further that, of the 22 applicants, 4 CRS employees "challenged Defendants' discrimination on the basis of age" and were then offered ITS positions. *Id.*, ¶ 14. The average age of those 4 CRS employees was 58.3 years. *Id.*, ¶ 14.

Plaintiff then provides a chart of the age, "years of tech experience" and "years as CRS" of 23 CRS employees who were selected for ITS positions. *Id.*, ¶ 15. All 23 CRS employees in the chart are under 40 years of age. As 74 CRS employees were initially selected and 4 additional CRS employees were selected after they "challenged" their non-selection, a total of 78 CRS employees were hired into the ITS positions. Plaintiff's chart indicates that only 23 of those 78 were substantially younger and less qualified than Plaintiff and those similarly situated. *Id.*, ¶¶

---

[2] Plaintiff asserts that 99 CRS employees applied for ITS positions, and of those, 74 were selected and 22 were initially denied. *Id.*, ¶ 13. Plaintiff does not indicate the status of the remaining 3 CRS employees who applied for ITS positions.

15-17. Accordingly, it is reasonable to infer that the remaining 55 CRS employees who were hired into the ITS positions were either not substantially younger or were equally or more qualified.

Plaintiff describes the "CRS employees who interviewed for the ITS position but were not selected" as "similarly situated" to Plaintiff "in that they were: all over 40 and in the protected class; CRS employees; and, had greater CRS and technology experience than substantially younger, less qualified individuals selected by Defendants." *Id*., ¶ 31.

## **STANDARD OF REVIEW**

The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F. 3d 231, 243 (4th Cir. 1999). The reviewing court is to rely solely on the allegations contained in the complaint and those documents attached as exhibits or incorporated by reference. *Simons v. Montgomery County Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it contains factual allegations that permit the court to reasonably infer that defendant is liable for the alleged misconduct. *Id*.

When ruling on such a motion, a district court must "accept the well-pled allegations of the complaint as true," and construe the allegations in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). However, the court need not "accept as true a legal conclusion couched as a factual allegation." *Ashcroft*, 556 U.S. at 662, 678 (quoting *Twombly*, 550 U.S. at 555); *see also Southern Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 182 (4th Cir. 2013) (holding that a court "need not accept factual allegations that constitute nothing more than legal conclusions or naked assertions,"

(internal quotation marks omitted)). Pleadings that offer mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft*, 556 U.S. at 662, 678 (quoting *Twombly*, 550 U.S. at 555, 557) (internal citation and alterations omitted). Plaintiff must sufficiently allege facts to permit the court to infer that all elements of each of her claims exist, *Jordan v. Alt. Resources Corp.*, 458 F.3d 332, 346 (4th Cir. 2006), and the facts alleged "must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555.

## ARGUMENT

**I.  Plaintiff fails to plead facts sufficient to state a claim for disparate impact in violation of the ADEA that is plausible on its face.**

A disparate impact claim asserts the existence of "employment practices that are facially neutral in their treatment of different groups but that, in fact, fall more harshly on one group than another and cannot be justified by business necessity." *Merritt v. WellPoint, Inc.*, 615 F.Supp.2d 440, 444-45 (E.D. Va. 2009) (*citing Teamsters v. United States*, 431 U.S. 324, 325-26 n.15, 97 S.Ct. 1843 (1977)). In order to state a claim of disparate impact, "it is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact." *Smith v. City of Jackson, Miss.*, 544 U.S. 228, 241, 125 S.Ct. 1536 (2005) (emphasis added). Instead, the employee is "responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities." *Id.* (emphasis added).

Plaintiff fails to isolate and identify a specific employment practice at issue. Plaintiff alleges that "Defendants implemented a screening and evaluation process and policy for the purpose of choosing among the candidates for the ITS position." Compl., ¶ 11. Plaintiff alleges

5

further that "Defendants' screening and evaluation process did not evaluate applicant fairly but instead discriminated against candidates based on age," *Id*. at ¶ 12, but fails to state with the required specificity the specific employment practice that is allegedly creating a disparate impact on persons over 40 years old. Failure to identify a specific employment practice is fatal to a disparate impact claim. *See Reed v. MCI, Inc.,* No. 505-CV-517-D3, 2005 WL 4827381, at *2–3 (E.D.N.C. Oct. 14, 2005), *aff'd sub nom. Reed v. MCI Worldcom Network Servs., Inc.*, 178 F. App'x 216 (4th Cir. 2006) (finding the plaintiff has failed to state a claim for disparate impact as he has not identified a facially neutral employment practice).

Examples of employment practices identified with the required specificity include an aptitude or intelligence test, a strength requirement, or a requirement that an applicant have a high school diploma. *See, e.g., Grevera v. Microsoft Corp.,* No. 3:12-CV-261-MOC-DSC, 2013 WL 1349180, at *3 (W.D.N.C. Feb. 21, 2013), *report and recommendation adopted,* No. 3:12-CV-00261-MOC, 2013 WL 1347859 (W.D.N.C. Apr. 3, 2013) (finding the plaintiff's identification of "the [d]efendant's stack ranking review model and the preference for hiring through the Microsoft Academy for College Hires" sufficient to state a claim for disparate impact); *see also Merritt*, 615 F.Supp.2d at 446 (E.D. Va. 2009) (finding the plaintiff's identification of analytical models and consideration of age in the cost of maintaining an older workforce as sufficient to state a claim for disparate impact). A conclusory allegation of a discriminatory "screening and evaluation process" is not sufficient.

Plaintiff also fails to assert sufficient facts to support a statistical disparity between those hired and rejected for the ITS position. Instead, he provides only averages for the applicants who were former CRS employees. *See* Compl., ¶¶ 10, 13-14. Plaintiff is challenging the "screening and evaluation process and policy for the purpose of choosing among <u>the candidates for the ITS</u>

positions," and Plaintiff concedes that "another 100 people who were not CRS employees applied for this position". Compl., ¶ 11. Plaintiff does not assert that the screening and evaluation process was applied differently to CRS versus non-CRS employees, yet he fails to provide any data or statistical analysis related to the entire pool of applicants or hires, but instead only provides average ages for an arbitrarily selected subgroup of the total population who applied for the positions at issue. Thus, the alleged statistical disparity analyzing only the pool of former CRS employees who applied and were selected or rejected is insufficient to support a claim for disparate impact based on the selection process for the ITS position that involved non-CRS employees.

Lastly, Plaintiff fails to assert any causation for the alleged statistical disparity. That is, his failure to identify a specific employment practice also results in his failure to assert that such practice was responsible for any alleged statistical disparity. For these reasons, Plaintiff has failed to plead facts sufficient to state a claim for disparate impact (Count II), and such claim should be dismissed.

II.     **Plaintiff fails to plead facts sufficient to state a claim for pattern and practice discrimination in violation of the ADEA that is plausible on its face.**

To state a claim for systemwide pattern or practice discrimination, Plaintiff must "prove more than the mere occurrence of isolated or sporadic discriminatory acts". *Equal Employment Opportunity Commission v. Western Electric Company, Inc.*, 713 F.2d 1011, 1016 (4th Cir. 1983). Plaintiff must "establish by a preponderance of the evidence that age discrimination was Defendants' 'standard operating procedure – the regular rather than the unusual practice'". *Id.* (quoting *Teamsters v. United States,* 431 U.S. 324, 336, 97 S.Ct. 1843, 1855, 52 L.Ed.2d 396 (1977)).

Plaintiff has failed to assert that the alleged discrimination was Defendants' "standard operating procedure" or that the discrimination was intentional. Accordingly, Plaintiff's claim for pattern and practice discrimination (Count III) must be dismissed.

### A. Plaintiff fails to assert facts from which the Court could infer that the alleged discrimination was Defendants' standard operating procedure.

The Supreme Court has described a pattern and practice claim as an allegation that the "discriminatory treatment is typical of [the employer's]…practices" or that the employer's practices are "motivated by a policy of…discrimination that pervades" the company. *Cooper v. Federal Reserve Bank,* 467 U.S. 867, 877, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984); *see also Segar v. Smith,* 738 F.2d 1249, 1274 (D.C.Cir.1984) (stating that "[a] pattern or practice case challenges a host of employment decisions over time; in effect, it challenges an employment system"), *cert. denied,* 471 U.S. 1115, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985). "A pattern or practice [is] present only where the denial of rights ... is repeated, routine, or of a generalized nature." *Teamsters,* 431 U.S. at 336 n. 16. *See Lowery v. Cir. City Stores, Inc.,* 158 F.3d 742, 759–60 (4th Cir. 1998), *cert. granted, judgment vacated on other grounds*, 527 U.S. 1031 (1999) (plaintiff's burden is to "prove more than the mere occurrence of isolated or accidental or sporadic discriminatory acts").

In other words, in order to prove a pattern or practice of discrimination, plaintiff must prove that unlawful discrimination is "the company's standard operating procedure," *Teamsters,* 431 U.S. at 336, 97 S.Ct. at 1855, and "such standard operating procedure can be proven either by demonstrating a consistent history of discriminatory decisionmaking or by demonstrating that discrimination was the declared policy of the employer." *Sperling v. Hoffmann-La Roche, Inc.*, 924 F. Supp. 1346, 1363–64 (D.N.J. 1996) *(citing Phila. Bd. of Ed.,* 911 F.2d at 892–93; 110 Cong.Rec. 14239 (1964)).

The defect in plaintiff's pattern or practice claim is that he has not asserted that *unlawful discrimination* was Defendants' standard operating procedure. *See Sperling*, 924 F. Supp. at 1363–64. Rather, Plaintiff asserts only that "the ITS selection process" discriminated on the basis of age and was Defendants' standard operating procedure. *See Id.* (allegation that employer's "employee evaluation system" was the standard operating procedure and that this procedure happened to result in discrimination held not sufficient).

Plaintiff also has not alleged any facts from which one can infer that unlawful discrimination was the standard operating procedure, and plaintiff's allegations are thus not sufficient. Plaintiff alleges pattern and practice discrimination in Defendants' screening and evaluation process and policy <u>in the selection of hires for the ITS position</u>, of which there were 84 positions. Compl., ¶¶ 10-12 (emphasis added). Plaintiff asserts there were 99 CRS employees applied and another potentially 100 non-CRS employees. *Id.*, ¶¶ 10-11. Plaintiff does not assert any discrimination as to the 100 non-CRS employees who applied. Plaintiff further alleges that 22 of the 99 CRS employees were not selected for the ITS position and only alleges discrimination as to those 22 persons. *Id.*, ¶ 13. Plaintiff in effect alleges discrimination with respect to a singular event, i.e., the hiring for the ITS position. Plaintiff does not allege, as he cannot, that this "screening and evaluation process and policy" was used by Defendants as to any other position in that department or in any other department, was used at any other time other that this single restructuring within one department, that any persons apart from the 22 described above were subjected to discrimination, or that the process and policy will be used by Defendants in the future. Accordingly, Plaintiff has not alleged facts to support that illegal discrimination was Defendants' standard operating procedure, that the policy of discrimination pervaded the school system or that

such procedure was akin to Defendants' employment system, and therefore, he has failed to state a claim for pattern and practice discrimination.

A "one-shot" event as alleged cannot constitute a pattern or practice of discrimination. *See Sperling v. Hoffmann-La Roche, Inc.,* 924 F. Supp. 1346, 1364 (D.N.J. 1996) ("Another reason that plaintiffs' claim does not fall within the framework of a pattern-or-practice case is that the employment practice…was used only once… and there is no evidence in the record to support a finding that [employer] may use them in the future").

Similar to this single restructuring, courts have found that a single mass layoff cannot constitute a pattern and practice of discrimination. *See Sperling*, 924 F.Supp. at 1364 (that court determined that no reasonable jury could find that an employer engaged in a pattern and practice of discrimination under the ADEA in conducting a onetime mass reduction in force); *Oinonen v. TRX, Inc.,* No. CIV.A.3:09CV1450-M, 2010 WL 396112, at *4 (N.D. Tex. Feb. 3, 2010) (finding that a 2008 layoff was a "one-shot event [that] could not constitute a pattern or practice of discrimination); *E.E.O.C. v. JBS USA, LLC*, 940 F. Supp. 2d 949, 972 (D. Neb. 2013) (finding that the plaintiff could not establish a pattern or practice claim "based on [the employer's] isolated termination of 80 Somali Muslim employees). In so ruling, courts have reasoned that "pattern-or-practice claims are only appropriate where the class plaintiffs seek to enjoin the defendant from engaging in existing or threatened discriminatory behavior", and accordingly there is no basis for such a claim if the alleged discrimination was a one-time event with no indications that the policy will be implemented again in the future. *See Sperling*, 924 F.Supp. at 1364.

At most, Plaintiff has alleged a one-time, isolated discriminatory action, not that the alleged unlawful discrimination is the "regular rather than the unusual practice," *Cooper,* 467 U.S. at 875, and as such, the pattern and practice claim must fail.

### B. Plaintiff fails to assert that the alleged discrimination was intentional or purposeful, and accordingly his claim for pattern and practice discrimination must be dismissed.

Plaintiff also does not allege that the discrimination against the protected class was intentional or purposeful as required for a pattern and practice claim. *See Teamsters*, 431 U.S. at 361-62 (finding that a company engages in a pattern or practice of discrimination when it systematically engages in intentional discrimination and maintains a regular policy of purposeful discrimination).

Plaintiff only alleges that the "screening and evaluation process did not evaluate applicants fairly and instead discriminated against candidates based on age" and that "Defendants' ITS selection process discriminated on the basis of age." Compl., ¶¶ 12 (emphasis added), 23 (emphasis added). Notably, Plaintiff does not allege that this discrimination was a result of the act(s) of any person(s) or that such discrimination was intentional. Plaintiff alleges only that the process resulted in discrimination.

This failure cannot be cured by Plaintiff's inclusion of statistics in his Complaint. A company's "overall employment statistics will, in at least many cases, have little direct bearing on the specific intentions of the employer when [taking an adverse employment action]." *Bostron v. Apfel*, 104 F.Supp.2d 548, 553 (D.Md.2000), *aff'd,* 55 Fed.App'x. 658, 2003 WL 257499 (4th Cir. Feb.7, 2003). This is because, "[w]ithout any indication of a connection between the statistics, the practices of an employer, and the employee's case, statistics alone are likely to be inadequate to show that the employer's decision [to take the adverse action against] the employee was impermissibly based on [age]." *Id.*; *see also Wright v. N. Carolina Dep't of Health & Human Servs., Office of Educ. Servs.*, 405 F. Supp. 2d 631, 638–39 (E.D.N.C. 2005). Even in light of the statistics provided, Plaintiff has failed to assert the existence of any intentional discrimination. Accordingly, he has failed to state a claim for pattern and practice discrimination.

**III.     Dismissal of all claims against Virginia Beach City Public Schools is proper as it is not an employer under the ADEA.**

VBCPS is not an employer under the ADEA and is not a legal entity against which suit may be brought as attempted by Plaintiff. *See Cross v. Suffolk City Sch. Bd.*, 2:11CV88, 2011 WL 2838180 * 4 (E.D. Va. July 14, 2011) (Suffolk Public Schools is not an employer under the ADEA). The Virginia Code authorizes the School Board of the City of Virginia Beach ("School Board"), not VBCPS, to employ and to be sued. *See* Va. Code Ann. § 22.1-71 (providing that a school board comprised of duly appointed or elected members "is declared a body corporate … and may sue, be sued …"); *Smith v. James C. Hormel Sch. of Virginia Inst. Of Autism*, 2009 WL 1081079 *4 (W.D. Va. 2009) (Green County Public Schools is not a recognized corporate entity with the authority to sue or be sued). Accordingly, VBCPS is not an employer subject to the ADEA liability in this case, and dismissal of the claims against VBCPS is proper.

## CONCLUSION

For the foregoing reasons, Defendants Virginia Beach City Public Schools and School Board of the City of Virginia Beach respectfully request that this Court dismiss all claims against VBCPS and the disparate impact (Count II) and pattern and practice (Count III) claims with prejudice for failure to state a claim upon which relief can be granted, and any other good and just relief.

This 29th day of November, 2017.

                                           VIRGINIA BEACH CITY PUBLIC SCHOOLS
                                           and SCHOOL BOARD OF THE CITY OF
                                           VIRGINIA BEACH,

                                           By:     /s/    Deborah Yeng Collins

Ann K. Sullivan, VSB No. 17762
Melissa Morris Picco, VSB No. 43046
Deborah Y. Collins, VSB No. 82835
SULLIVAN LAW GROUP, PLC
440 Monticello Avenue, Suite 1814
Norfolk, Virginia 23510
(757) 955-8545
(757) 955-8501 (fax)
asullivan@asksullivan.com
mpicco@asksullivan.com
dcollins@asksullivan.com
*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on November 29, 2017, I electronically filed the foregoing with the Clerk of the Court for the Eastern District of Virginia using the CM/ECF system that will send notification of such filing to the following:

> James R. Theuer, VSB # 68712
> James R. Theuer, PLLC
> 555 E. Main St., Ste. 1212
> Norfolk, VA 23510
> T: (757) 446-8047
> F: (757) 446-8048
> jim@theuerlaw.com
> *Counsel for Plaintiff and those similarly situated*

By: /s/ Deborah Y. Collins
    Ann K. Sullivan, VSB # 17762
    Melissa M. Picco, VSB # 43046
    Deborah Y. Collins, VSB # 82835
    SULLIVAN LAW GROUP, P.L.C.
    440 Monticello Avenue, Suite 1814
    Norfolk, Virginia 23510
    (757) 955-8545
    (757) 955-8501 (fax)
    asullivan@asksullivan.com
    mpicco@asksullivan.com
    dcollins@asksullivan.com
    *Counsel for Defendants*