IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**JOSEPH H. ANDREANA,**
    on behalf of himself and all others
    similarly situated

    **Plaintiff,**

v.                                                                            CIVIL ACTION NO. 2:17-cv-574

**VIRGINIA BEACH CITY PUBLIC
SCHOOLS,**

and

**SCHOOL BOARD OF THE CITY OF
VIRGINIA BEACH.**

    **Defendants.**

*MEMORANDUM OPINION AND ORDER*

This Order stems from Plaintiff Margaret S. Marcotte's ("Marcotte") Response to this Court's January 14, 2019 Order. In that Order, the Court directed Marcotte's Counsel to inform the Court whether Marcotte would continue to pursue her disparate treatment claim in this instant collective action, or if she wishes to do so in her individual lawsuit captioned as *Marcotte v. School Board of the City of Virginia Beach*, 2:17-cv-606, which she filed in the same United States District Court before the Honorable Chief Judge Mark S. Davis. ECF No. 73. On January 24, 2019, Marcotte's Counsel filed a response to the January 14, 2019 Order, in which he states that Marcotte will not make either election but continue in both suits. *See* ECF No. 76 at 3. For the reasons stated below, given Marcotte's refusal to make an election, despite a court order to do so, the Court **DISMISSES** Marcotte as a plaintiff from the instant lawsuit. She may pursue her claims in her individual lawsuit.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

This action stems from a series of allegations of age discrimination against Virginia Beach public schools. *See generally* ECF No. 1. Named plaintiff Joseph Andreana ("Andreana") claims that in 2015, Virginia Beach City Public Schools and the School Board of Virginia Beach ("Defendants") informed all 104 Computer Resource Specialist ("CRS") employees that the position would cease to exist, and Defendants would create only eighty-four Information Technology Specialist ("ITS") positions. *Id.* Defendants allegedly required all former CRSs to reapply to the new ITS positions, directly competing with other employees and the general public. *Id.* Of the 104 former CRSs, ninety-nine of them applied to be ITSs, while there were 100 other applicants. *Id.* at ¶ 11.

Defendants used a "screening and evaluation process and policy" in selecting candidates for the ITS positions. *Id.* Plaintiffs claim that this process and policy was willfully discriminatory because it disregarded older candidates in favor of younger ones. *Id.* at ¶¶ 12, 26. Plaintiffs allege that Defendants selected individuals for the ITS position based on age, even though Plaintiffs allegedly were better qualified and met all expectations in carrying out their duties as CRSs. *Id.* at ¶¶ 16–19. As a result of this alleged discrimination, Plaintiffs allegedly were forced to accept positions with Defendants at lower pay or retire. *Id.* at ¶¶ 20–22.

Andreana filed his Complaint for this collective action on behalf of himself on November 7, 2017. Andreana alleged three claims under the Age Discrimination in Employment Act of 1967 ("ADEA"): disparate treatment, disparate impact, and pattern and practice discrimination. *Id.* at ¶¶ 33–47.

On November 20, 2017, Marcotte filed her individual action. *Marcotte*, ECF No. 1. Marcotte alleges claims for disparate treatment, disparate impact, and retaliation under the

ADEA for similar conduct from 2015 through 2017. *Id.* at ¶¶ 30–46. On January 2, 2018, Marcotte amended her Complaint. ECF No. 12. In her Amended Complaint, Marcotte dropped her disparate impact claim but continued with the two other claims. *Id.* at ¶¶ 31–41. The same attorney represents both Andreana's collective action and Marcotte's individual action ("Counsel").

On May 9, 2018, the Court issued two Orders in the instant case. *Andreana*, ECF Nos. 30–31. In its first Order, the Court conditionally certified the collective action under 29 U.S.C. § 216(b). ECF No. 30 at 8–9. In its second Order, the Court granted in part Defendant's motion to dismiss after finding that it did not have subject matter jurisdiction over the pattern and practice discrimination claim, but keeping the disparate treatment and disparate impact claims intact. ECF No. 31 at 6–10. On May 23, 2018, the Court approved Andreana's collective action notice. ECF No. 32. All additional plaintiffs needed to file their notices to opt in by August 21, 2018. *See* ECF No. 31 at 9. Marcotte joined the collective action to pursue her 2015 disparate treatment and disparate impact claims on June 4, 2018. ECF No. 36 at ¶ 1.

On September 14, 2018, Counsel filed Motions to Consolidate in both cases. *Andreana*, ECF Nos. 56–57; *Marcotte*, ECF Nos. 24–25. In these motions, Counsel sought to consolidate Marcotte's 2015–2017 disparate treatment claim in her individual action with the instant collective action, while still allowing Marcotte's 2015–2017 retaliation claim to continue in the individual action. *See Andreana*, ECF No. 56 at 1. On December 17, 2018, the Court denied the Motion in the *Andreana* case because this consolidation would be claim splitting. ECF No. 63 at 3. On January 2, 2019, Chief Judge Davis denied the Motion in the *Marcotte* case based on the reasoning of the December 17, 2018 *Andreana* Order. *Marcotte*, ECF No. 34 at 4–5.

3

On December 31, 2018, Defendants filed a letter with the Court, in which they informed the Court that Marcotte has refused to choose whether to pursue her claims in one action or the other. ECF No. 73. On January 14, 2019, the Court issued an order in the *Andreana* collective action that directed Marcotte to elect within ten days whether she wished to pursue her disparate treatment claim in the collective and therefore drop the claim from her individual action, or if she wished to drop out of the collective action and pursue her disparate treatment claim in her individual action. *Andreana*, ECF No. 73. On January 24, 2019, Counsel filed Marcotte's response and indicated that consolidating the claims was not claim splitting. ECF No. 76 at 2. Counsel stated that Marcotte refuses to "make a forced election" and will continue pursuing her disparate treatment claim in both actions. ECF No. 76 at 3. Counsel has filed neither a motion for reconsideration under Federal Rule of Civil Procedure 54(b) nor a notice of appeal under Federal Rule of Appellate Procedure 4(b) with respect to either the *Andreana* December 17, 2018 Order or the *Marcotte* January 2, 2019 Order.

## II. LEGAL STANDARDS

### A. Multiple Actions and First-To-File

Two general tenets of federal civil litigation are relevant. First, a plaintiff generally has "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977). Second, the "first-to-file" rule suggests that courts should generally dismiss the subsequent action in favor of the lawsuit that was initially filed. *Ellicott Mach. Corp. v. Modern Welding Co., Inc.*, 502 F.2d 178, 180 n.2 (4th Cir. 1974); *Byerson v. Equifax Info. Servs., L.L.C.*, 467 F. Supp. 2d 627, 635–36 (E.D. Va. 2006). Under the first-to-file rule, the cases "need not be

identical if there is substantial overlap with respect to the issues and parties." *Id.* (citing *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997)).

**B. Collective Actions under 29 U.S.C. § 216(b)**

Section 216(b) of Title 29 of the United States Code originates from the Fair Labor Standards Act (FLSA). *See* 52 Stat. 1060, 1069. A collective action under the ADEA is pursued under 29 U.S.C. § 216(b). 29 U.S.C. § 626(b). Under this statute, named plaintiffs may pursue their claims under a "dual theory"; they may pursue claims both as an individual action and as a collective action within the same complaint if they are explicit about this desire. *See Smith v. Cent. Sec. Bureau, Inc.*, 231 F. Supp. 2d 455, 460–62 (W.D. Va. 2002); *see also Gordon v. TBC Retail Grp., Inc.*, No. 2:14-cv-3365, 2016 WL 4247738, at *11–14 (D.S.C. Aug. 11, 2016); *Faust v. Comcast Cable Commc'ns Mgmt., L.L.C.*, No. WMN-10-2336, 2013 WL 5587291, at *7–*8 (D. Md. Oct. 9, 2013).

Collective actions are creatures of judicial economy that allow plaintiffs to band together and streamline their cases rather than filing hundreds of separate individual actions. *Prickett v. DeKalb Cnty.*, 349 F.3d 1294, 1297 (11th Cir. 2003); *Mayhew v. Loved Ones in Home Care, L.L.C.*, No. 2:17-cv-3844, 2018 WL 68616073, at *3–*4 (S.D.W. Va. Dec. 27, 2018). In this sense, collective actions under § 216(b) are somewhat similar to class actions under Federal Rule of Civil Procedure 23. *Oldershaw v. DaVita Healthcare Partners, Inc.*, 255 F. Supp. 3d 1110, 1113 (W.D. La. 2017). However, these two forms of lawsuit differ in that "a named plaintiff in a[ collective] action has no interest in the collective action beyond [his or] her individual claim because no separate legal entity is created . . . [, while a class action] creates a 'plaintiff class' which is then represented by the named plaintiff and plaintiff's counsel." *Id.* In other words,

5

while class actions function by homogenizing every potential plaintiff into a single legal entity that the named plaintiff represents, in a collective action "every named and 'opt-in' plaintiff pursues his or her individual claim.'" *Id.* (citing *Almanzar v. C&I Assocs., Inc.*, 175 F. Supp. 3d 270, 279 n.3 (S.D.N.Y. 2016)).

### III. DISCUSSION

As an initial matter, the Court notes that Counsel continues to argue that there is no claim splitting between the *Andreana* and *Marcotte* actions in spite of the finding of two judges in this Court. *See* ECF No. 76 at 2–3. However, the Court reminds Counsel that if he believes there is any form of error in the Court's Orders, a motion for reconsideration or an appeal are the appropriate avenues for challenging these Orders. What is not proper is to openly reject and defy the Court's Order without following the appropriate procedure.

Furthermore, Counsel states the Marcotte opted into the collective action only for the disparate impact claim, not her disparate treatment claim. *Id.* at 2. This is patently false as Marcotte's consent notice in the *Andreana* case states that she "hereby consent[s], agree[s], and opt[s]-in to the lawsuit . . . *to pursue my claims for disparate treatment, disparate impact*, and pattern and practice discrimination based on age." ECF No. 36 at ¶ 1 (emphasis added). Marcotte's consent clearly states she is pursuing her claims for disparate treatment and disparate impact, even if Counsel seems to disagree.

In fact, even if Marcotte indeed opted in to the collective action just for her disparate impact claim, while she continued to pursue her disparate treatment claim in her individual action, that would still be claim-splitting. *See Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 273 F. App'x 256, 264–65 (4th Cir. 2008). To refresh Counsel's recollection, claim-splitting "'prohibits a plaintiff from prosecuting its case piecemeal and requires that all claims

6

arising out of a single wrong be presented in one action.'" *Id.* (quoting *Myers v. Colgate-Palmolive Co.*, 102 F. Supp. 2d 1208, 1224 (D. Kan. 2000)). If the plaintiff has one suit pending in federal court, he or she "has no right to assert another action 'on the same subject in the same court, against the same defendant at the same time.'" *Id.* at 265 (quoting *Curtis. v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000)). This will result in the second action being barred if the claims in it "involve[] the same parties and 'arise[] out of the same transaction or series of transactions as the first claim.'" *Id.* (quoting *Trustmark Insur. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1269–70 (11th Cir. 2002)). Marcotte's disparate treatment and disparate impact claims center around the same subject matter—Defendants' age discrimination in not re-hiring her as an ITS. Any suggestion from Counsel that there is no claim-splitting between these two cases directly contravenes clearly established case law on the doctrine.

As to whether Marcotte should remain in the collective action or in her individual action, Marcotte filed her individual action on November 20, 2017 but did not join the collective action until June 4, 2018. Upon opting-in to the collective action, Marcotte established her own independent action against Defendants. *See Oldershaw*, 255 F. Supp. 3d at 1113 (citing *Almanzar v. C&I Assocs., Inc.*, 175 F. Supp. 3d 270, 279 n.3 (S.D.N.Y. 2016)). Marcotte cannot pursue two separate actions on disparate treatment, not only because that would contradict the fundamentals of civil litigation, *see Walton*, 563 F.2d at 70, but also because that would undermine the core of collective actions. *See Prickett*, 349 F.3d at 1297. Section 216(b) cannot allow each opt-in plaintiff to join the collective action and then pursue an independent individual action, otherwise the whole point of a collective action is for naught. *See id.* Therefore, because Marcotte currently "maintain[s] two separate actions involving the same subject matter at the same time in the same court and against the same defendant," *Walton*, 563 F.2d at 70, the first-

7

to-file doctrine suggests the Court should dismiss Marcotte from the collective action since her individual action was filed first. *Ellicott Mach.*, 502 F.2d at 180 n.2.

Such judicial action would arguably contradict the concern for judicial economy that support the existence of collective actions. *See Prickett*, 349 F.3d at 1297. However, judicial economy is not the sole concern of the Court, and the Court has broad discretion to manage its own docket. *See United States v. Goodson*, 204 F.3d 508, 514 (4th Cir. 2000). If Marcotte were to remain in the collective action and had to drop her disparate treatment claim from her individual action, she would only be able to pursue such claims for the 2015 year and would be barred by *res judicata* from pursuing her 2016 and 2017 claims. Allowing her to pursue the disparate treatment claim in her first-filed individual action would allow her to pursue her claim for all three years. The Court understands that there will be two cases with overlapping subject matter before it. However, Marcotte would now only be involved in one action, so there will be no duplicitous production of discovery and other filings that relate to her specific claims. Judicial economy must sometimes bend towards the equitable discretion the Court possesses over managing its docket.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff Marcotte is hereby **DISMISSED** from this collective action. She may any and all available claims in her individual action that is also pending before this Court. The Court **DIRECTS** the Clerk to provide a copy of this Order to the parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
February /( , 2019

Raymond A. Jackson
United States District Judge

8