
APR 1 2019

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

JOSEPH H. ANDREANA, *et al.*

        Plaintiffs,

v.                                                                                       CIVIL ACTION NO.: 2:17-cv-574

VIRGINIA BEACH CITY PUBLIC SCHOOLS,
and
SCHOOL BOARD OF THE CITY OF
VIRGINIA BEACH,

        Defendants.

## *MEMORANDUM OPINION AND ORDER*

Before the Court is Virginia Beach City Public Schools and School Board of the City of Virginia Beach's (collectively, "Defendants") Motion for Decertification. ECF Nos. 90–91. For the reasons stated herein, Defendants' Motion is **DENIED**.

### I.    FACTUAL AND PROCEDURAL HISTORY

This action stems from a series of allegations of age discrimination against Virginia Beach public schools. Plaintiffs claims that in 2015, Virginia Beach City Public Schools and the School Board of Virginia Beach ("Defendants") informed all 104 Computer Resource Specialist ("CRS") employees that the position would cease to exist, and Defendants would create only eighty-four Instructional Technology Specialist ("ITS") positions. ECF No. 1 at ¶¶ 9–10. Defendants allegedly required all former CRSs to reapply to the new ITS positions, directly competing with other employees and the general public. Id. Of the 104 former CRSs, ninety-nine of them applied to be ITSs, while there were 100 other applicants. *Id.* at ¶ 11.

Defendants used a "screening and evaluation process and policy" in selecting candidates for the ITS positions. *Id.* Plaintiffs claim that this process and policy was willfully discriminatory because it disregarded older candidates in favor of younger ones. *Id.* at ¶¶ 12, 26. Plaintiffs allege that Defendants selected individuals for the ITS position based on age, even though Plaintiffs allegedly were better qualified and met all expectations in carrying out their duties as CRSs. *Id.* at ¶¶ 16–19. As a result of this alleged discrimination, Plaintiffs allegedly were forced to accept positions with Defendants at lower pay or retire. *Id.* at ¶¶ 20–22.

Named Plaintiff Joseph Andreana filed his Complaint for this collective action on November 7, 2017 and alleged three claims under the Age Discrimination in Employment Act of 1967 ("ADEA"): disparate treatment, disparate impact, and pattern and practice discrimination. *Id.* at ¶¶ 33–47.

On May 9, 2018, the Court issued two Orders in the instant case. Andreana, ECF Nos. 30–31. In its first Order, the Court conditionally certified the collective action under 29 U.S.C. § 216(b). ECF No. 30 at 8–9. In its second Order, the Court granted in part Defendant's motion to dismiss after finding that it did not have subject matter jurisdiction over the pattern and practice discrimination claim, but keeping the disparate treatment and disparate impact claims intact. ECF No. 31 at 6–10. On May 23, 2018, the Court approved Andreana's collective action notice. ECF No. 32. All additional plaintiffs needed to file their notices to opt in by August 21, 2018. See ECF No. 31 at 9. After two opt-in plaintiffs were dropped from the action, *see* ECF Nos. 87, 92, eleven Plaintiffs remain in the collective action. ECF No. 91 at 2.

On March 11, 2019, Defendants filed the instant Motion, which argues that Plaintiffs are not similarly situated to allow a collective action under § 216(b) for either their disparate treatment or disparate impact claims. *See* ECF No. 91 at 12–24. Plaintiffs filed a response in

2

opposition on March 21, 2019. ECF No. 93. Defendants filed a reply on March 27, 2019. ECF No. 97. Plaintiffs requested a hearing on this matter. ECF No. 99. The Court finds that the matter is ripe for judicial determination, and a hearing is not warranted.

## II. LEGAL STANDARD

The ADEA incorporates the collective action procedures and scheme of the Fair Labor Standards Act ("FLSA"). 29 U.S.C. §626(b) (The provisions of this chapter shall be enforced in accordance with the powers, remedies, and procedures provided in sections ... 216 (except for subsection (a) thereof . . .) of this title"). Furthermore, the Court construes the ADEA to be consistent with FLSA case law and precedent.[1] *EEOC v. Baltimore Cnty.*, 904 F.3d 330, 334 (4th Cir. 2018), *cert. docketed*, No. 18-781 (Dec. 19, 2018) ("Because Congress adopted the enforcement procedures and remedies of the FLSA into the ADEA, we construe the ADEA consistent with the cited statutory language in and judicial interpretations of the FLSA."); *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 n.12 (11th Cir. 1996) ("[I]t is clear that the requirements for pursuing a § 216(b) [collective] action are independent of, and unrelated to, the requirements for class action under Rule 23 of the Federal Rules of Civil Procedure.") (citing *LaChapelle v. Owens Ill., Inc.*, 513 F.2d 286, 289 (5th Cir. 1975)); *see Lorillard v. Pons*, 434 U.S. 575, 582 (1978) ("but for those changes Congress expressly made [in the ADEA], it intended to incorporate fully the remedies and procedures of the FLSA.").

---

[1] While the reasoning for class certification and decertification under Federal Rule of Civil Procedure 23 may be useful in the context of ADEA collective actions under § 216(b), *see Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001) (suggesting that analyses under Rule 23 and § 216(b) consider "the same or similar factors"), courts should not rely on these cases wholeheartedly as Rule 23 provides different requirements and standards. *See Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 131 (3d Cir. 2018) (holding that certification under Rule 23 is not "inextricably intertwined" with an FLSA collective action because Rule 23 and § 216(b) "are fundamentally different creatures"); *Campbell v. City of L.A.*, 903 F.3d 1090, 1111–13 (9th Cir. 2018) (rejecting the idea that a collective action under § 216(b) is an "opt-in analogue" to Rule 23(b)(3) classes). *But see Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013) (finding that "there isn't a good reason to have different standards for the certification of the two different types of action").

3

Pursuant to Section 16(b) of the FLSA, an action may be maintained against an employer in federal court "by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The collective action mechanism allows for the efficient adjudication of similar claims so that "similarly situated" employees, whose claims are often small and not likely to be brought on an individual basis, may join together and pool their resources to prosecute claims of misconduct by their employers. *See Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

District courts within the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") have uniformly employed a two-step inquiry in deciding whether to certify a collective action under the FLSA:

> First, upon a minimal evidentiary showing that a plaintiff can meet the substantive requirements of 29 U.S.C. § 216(b), the plaintiff may proceed with a collective action on a provisional basis. Second, following discovery, the court engages in a more stringent inquiry to determine whether the plaintiff class is "similarly situated" in accordance with the requirements of § 216, and renders a final decision regarding the propriety of proceeding as a collective action.

*Rawls v. Augustine Home Health Care, Inc.*, 244 F.R.D. 298, 300 (D. Md. 2007) (internal citations omitted). The second phase of collective action certification under the FLSA is often prompted by a defendant's filing of a motion to decertify, and the Court undertakes a more "stringent" factual determination as to whether members of the collective class are, in fact, similarly situated. *See Romero v. Mountaire Farms, Inc.*, 796 F. Supp. 2d 700, 705 (E.D. N.C. 2011) (citing *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001)); *Syrja v. Westat, Inc.*, 756 F. Supp. 2d 682, 686 (D. Md. 2010). If, after discovery, it is apparent that plaintiffs are not similarly situated, the Court may decertify the collective action and dismiss the claims of the opt-in plaintiffs without prejudice. *Romero*, 796 F. Supp. 2d at 706.

4

The FLSA does not define "similarly situated" and the Fourth Circuit has not set out a standard for this term in the context of a FLSA collective action. *Choimol v. Fairfield Resorts, Inc.*, 475 F. Supp. 2d 557, 562 (E.D. Va. 2006). Courts have determined if plaintiffs are similarly situated on an *ad hoc* basis looking at a variety of factors. *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001); 45C Am. Jur. *Job Discrimination* § 2142; *see also Zavala v. Wal Mart Stores, Inc.*, 691 F.3d 527, 536–37 (3d Cir. 2012) (citation omitted). For example, the United States Court of Appeals for the Tenth Circuit has found that individuals are similarly situated in the context of ADEA "when they (1) have dealt with the same supervisor; (2) were subjected to the same work standards; and (3) had engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1277 (10th Cir. 2005) (citing *Mazzella v. RCA Global Commc'ns., Inc.*, 642 F. Supp. 1531, 1547 (S.D.N.Y. 1986)), *abrogated on other grounds*, *Lincoln v. BNSF Railway Co.*, 900 F.3d 1166, 1181–83 (10th Cir. 2018). In general, courts have made the determination based on the existence of "issues common to the proposed [collective] that are central to the disposition of the [ADEA] claims[, which] can be substantially adjudicated without consideration of facts unique or particularized as to each class member." *Houston*, 591 F. Supp. 2d at 831.

The situations of each plaintiff need not be identical to be considered similarly situated:

> That is not to say that there can be no differences among class members or that an individualized inquiry may not be necessary in connection with fashioning the specific relief or damages to be awarded to each class member. Rather, the inquiry is whether the presence of common issues allows the class-wide claims to be addressed without becoming bogged down by individual differences among class members.

*Id.* Plaintiffs are only "'required to prove that all of the *relevant* aspects of [their] employment situation were 'nearly identical.'" *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994)).

Whether to decertify or not is within the court's broad discretion. *Thiessen*, 267 F.3d at, 1105; *Aldertoy v. Maxim Healthcare Servs., Inc.*, No. TDC-14-2549, 2015 WL 5675527, at *8 (D. Md. Sept. 23, 2015). Three factors are useful in making this determination: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) defenses which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Sharer v. Tandberg, Inc.*, 1:06-cv-626, 2007 WL 676220, at *2 (E.D. Va. Feb. 27, 2007).

### III. DISCUSSION

#### A. Similar Factual and Employment Settings Factor

Defendants argue that because Plaintiffs' claims require individualized evidence and testimony, decertification is preferred. ECF No. 91 at 12–16, 19–22. Defendants claim that the Court should decertify because each Plaintiff must show how they were individually more qualified than their younger counterparts, and they have varied years of experiences, awards, performance reviews, and degrees. *Id.* at 13–14. Moreover, each Plaintiff must prove Defendants' discriminatory intent with respect to the individual, and Plaintiffs claim Defendants discriminated against them in differing ways, such as the process through which they were rejected. *Id.* at 14–15.

However, similarity of facts and employment settings does not mean that "there can be no differences among class members or that an individualized inquiry may not be necessary in connection with fashioning the specific relief or damages to be awarded to each class member."

6

*Houston*, 591 F. Supp. 2d at 831. Rather the Court must look at "all of the *relevant* aspects of [their] employment situation." *Ercegovich*, 154 F.3d at 352.

Here, Plaintiffs were all employed as CRSs by Defendants in 2015 who then applied to the new ITS position and were all rejected. ECF No. 93 at 2. The manner and form in which they were interviewed and rejected does indeed vary, whether they were rejected outright or deferred and later rejected. *See* ECF No. 91 at 14. But at bottom, Plaintiffs are each arguing the same legal theory: Defendants rejected them based on their age. While each Plaintiff may require particular evidence to make out their specific case, such individualized evidence does not undermine the collective's nature.

Defendants seem to argue that *any* disparate treatment or disparate impact claim under the ADEA cannot persist in a collective action; only pattern and practice claims can be properly presented under § 216(b). *See* ECF No. 91 at 12; ECF No. 97 at 4–5. Such a categorical approach is a bridge too far. While disparate treatment and disparate impact claims require more individualized evidence and may be more susceptible to decertification, it does not mean that any such claims are barred from forming the basis of a collective action. *See Karlo v. Pittsburgh Glass Works, LLC*, No. 2:10-cv-1283, 2014 WL 1317595, at *18 (W.D. Pa. Mar. 31, 2014) (finding decertification because the plaintiffs were terminated "on a decentralized basis" since they "held seven different titles with varied job duties in two separate divisions of [the defendant] and across five locations"). Where the plaintiffs hold similar titles, are located in the same location, and allege similar conduct, as Plaintiffs do so here, disparate treatment and disparate impact claims may continue in a collective action. Among Plaintiffs, there are common questions of law, factual issues and relief sought. Therefore, the Court finds the factual and employment settings factor of the decertification analysis weighs in favor of Plaintiffs.

## B. Individualized Defenses Factor

"The individualized defenses factor assesses whether potential defenses pertain to the plaintiff class or whether the potential defenses require proof of individualized facts at trial." *Rawls*, 244 F.R.D. at 300. As a corollary to their argument with respect to the first factor, Defendants argue that because Plaintiffs will have to put on individual evidence to establish each particular disparate treatment claim, Defendants must put on individualized defenses. ECF No. 91 at 16–18. But again, it is the Court's view that Defendants are splitting hairs. Defendants are offering the same defense to each Plaintiff: namely, that there are "legitimate nondiscriminatory explanations" for the alleged conduct. *Id.* at 16.

As for the disparate impact claim, Defendants lays out two arguments. First, they focus on Plaintiffs' expert statistical report and argue that the statistics do not support disparate impact. *Id.* at 22–23. Such argument is not relevant to the question of decertification. Arguments regarding the interpretation and/or efficacy of expert statistics are proper in motions for summary judgment or at trial. The Court does not find this argument persuasive.

Second, Defendants raise the same argument as the disparate treatment claims, mainly that they will put on different reasons why each Plaintiff was rejected for the ITS position. *Id.* at 23–24. The Court rejected that argument for the disparate treatment claims; the same is true for the disparate impact claims.

A collective action does not necessitate that "there be no differences among class members," nor does it prohibit individualized inquiry "in connection with fashioning the specific relief or damages to be awarded to each class member." *Houston*, 591 F. Supp. 2d at 832. Defendant has not shown that these defenses require "'substantial individualized determinations' that would not lead to efficient adjudication." *Gionfriddo v. Jason Zink, LLC*, 769 F. Supp. 2d

880, 887–88 (D. Md. 2011) (quoting *Purdham v. Fairfax County Pub. Sch.*, 629 F. Supp. 2d 544, 549 (E.D. Va. 2009)). Therefore, the individualized defense factor of the decertification analysis weighs in favor of Plaintiffs and supports this Court's finding that certified class treatment of Plaintiffs' claims is appropriate.

## C. Fairness and Procedural Considerations Factor

In terms of the final factor, fairness and procedural considerations:

> [T]he Court considers the primary objectives of allowance of a collective action under § 216(b), namely "(1) to lower costs to the plaintiffs through the pooling of resources; and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same alleged activity." *Moss v. Crawford & Co.*, 201 F.R.D. 398, 410 (W.D. Pa. 2000). The Court also must "determine whether it can coherently manage the class in a manner that will not prejudice any party." *Id.*

*Rawls*, 244 F.R.D. at 302. The fairness and procedural considerations factor supports Plaintiffs. Defendants contend that if this action is not decertified, it will need to prepare for eleven mini-trials of each plaintiff because the claims are vastly different. However, the members of the collective share a common issue: whether Defendants did not rehire Plaintiffs as ITSs because of their age. Each individual plaintiff would be unlikely to pursue his or her claim alone because of the costs involved relative to the damages sought. *See Russell v. Ill. Bell Tel. Co., Inc.*, 721 F. Supp. 2d 804, 823 (N.D. Ill. 2010) ("Because of the modest amounts likely involved, many of the plaintiffs would be unable to afford the costs of pursuing their claims individually."). Certification would reduce the costs of litigation to members of the collective. Moreover, "it is an extreme step to dismiss a suit simply by decertifying a class, where a 'potentially proper class' exists and can be easily created." *Woe v. Cuomo*, 729 F.2d 96, 107 (2d Cir. 1984). The fairness and procedural considerations factor weighs against the Defendants.

## IV. CONCLUSION

For the reasons stated above, the Court finds that Plaintiffs are similarly situated to proceed as a collective. Defendant's Motion to Decertify the FLSA collective action class is **DENIED**. The Court **ORDERS** this case to proceed as a collective action as conditionally certified, subject to the modifications in class membership previously ordered by the Court. The Clerk is **DIRECTED** to provide a copy of this Order to counsel and parties of record.

**IT IS SO ORDERED.**

Norfolk, Virginia
April /9 , 2019

Raymond A. Jackson
United States District Judge